FILED
11/10/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
PLG

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PEGGY RUDD | No.<br><br>Violations: Title 18, United States Code, Section 1343 |

**1:26-cr-00587**
Judge Rebecca R. Pallmeyer
Magistrate Judge Beth W. Jantz
RANDOM/Cat. 3

**COUNTS ONE THROUGH EIGHT**

The SPECIAL NOVEMBER 2025 GRAND JURY charges:

1. At times material to this indictment:

a. Business A was a national public transportation company with offices located in Lisle and Warrenville, Illinois, among other places. Defendant was employed by Business A in various human resource and payroll-related positions between approximately October 2016 and May 2025, including as a Payroll Compliance Analyst.

b. Business A's compensation program included issuance of debit cards to employees that were funded by Business A to make payments for certain employment-related purposes. For example, employees could choose to receive payroll through their Business A-issued debit card, rather than to a bank account. Business A also used the debit card program to make payments to employees outside of its regular direct deposit cycle that had been approved by supervisors on behalf of their employees, such as missed hours, lost checks, or salary advances. Once Business A caused funds to be deposited on the employees' debit card, the funds could be spent

by the employee in the same manner as other commercially available prepaid debit cards.

c. An outside vendor, Company B, provided a software platform to Business A to implement its debit card program and access to financial networks that enabled its employees to use their debit cards, such as at ATMs, point-of-sale terminals, to pay bills, and to conduct peer-to-peer transactions.

d. Between approximately May 2023 and approximately April 2024, defendant supervised the day-to-day administration of Business A's debit card program. In this role, Business A provided defendant authority to (i) issue specific payments to employees through their Business A debit card when approved by managers for proper business purposes, and (ii) request that Business A management transfer funds to the account of the outside vendor used to make payments to its employees through the Business A debit card program.

e. In supervising the debit card program, Business A relied on defendant to issue payments to employees' debit card account only for legitimate payments authorized by Business A, to keep accurate and detailed records relating to the program, and to make truthful reports to Business A and Company B on its status and on individual funding requests.

2. Beginning in or about May 2023, and continuing until in or about April 2024, in the Northern District of Illinois, Eastern Division, and elsewhere,

PEGGY RUDD,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud Business A, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that defendant PEGGY RUDD, through abuse of her authority as supervisor of Business A's debit card program, stole in excess of $600,000 from Business A by fraudulently approving approximately 149 payments to herself through the debit card program that had not been approved by Business A and were not owed to her as compensation or for any other purpose related to the operation of Business A.

4. It was further part of the scheme that, in order to conceal and disguise the unauthorized nature of the payments, defendant PEGGY RUDD knowingly made false entries in the records of Business A and Company B that falsely and fraudulently identified the purpose of the payments, such as "test," "test reverse," "missed payment," "retro pay," "relocation expense," and various travel expense-related reimbursements.

5. It was further part of the scheme that, after causing Business A to make payments through Company B to her Business A debit card, defendant PEGGY RUDD used the Business A debit card to pay personal expenses, such as gambling,

hotel rooms, restaurants, travel, and daily living expenses, such as rent, groceries, and utilities.

6. It was further part of the scheme that defendant PEGGY RUDD caused Business A to issue a debit card in the name of her spouse, in addition to the Business A debit card that was routinely issued to defendant by Business A. Defendant frequently transferred funds stolen from Business A from her Business A debit card to the second card in her spouse's name.

7. It was further part of the scheme that, when activity on defendant PEGGY RUDD's Business A debit card triggered inquiries from Company B as to whether certain transactions were authorized, defendant falsely and fraudulently represented to Company B that the transactions were valid.

8. It was further part of the scheme that defendant PEGGY RUDD misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

9. It was further part of the scheme that, as a result of her actions, defendant PEGGY RUDD caused Business A to suffer loss in excess of approximately $600,000.

10. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere,

PEGGY RUDD,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, listed below, namely, funding requests for defendant's Business A debit card that were processed by Company B on computer servers located in Oregon, each funding request constituting a separate count:

| Count | Date | Amount | Purported funding detail |
|---|---|---|---|
| 1 | 02/06/2024 | $4,525.37 | Missed Payment |
| 2 | 02/09/2024 | $4,982.65 | Reimbursement and Refund Travel 02/09 |
| 3 | 02/13/2024 | $4,992.27 | Travel Fare Reimbursement and Hotel |
| 4 | 02/14/2024 | $5,550.62 | December January Expenses |
| 5 | 02/15/2024 | $5,245.36 | February Remainder Expenditures |
| 6 | 02/16/2024 | $4,682.95 | Rejected Direct Deposit |
| 7 | 02/17/2024 | $6,538.45 | February Expense Hotel Car Registration |
| 8 | 02/18/2024 | $4,819.15 | Relocation Expense |

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL NOVEMBER 2025 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 9 of Count One are incorporated here.

2. On or about March 1, 2024, in the Northern District of Illinois, Eastern Division, and elsewhere,

PEGGY RUDD,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an email from defendant to a representative of Company B located in California, falsely confirming that certain funding requests for her Business A debit card were valid;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

The SPECIAL N0VEMBER 2025 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to, a personal money judgment in the amount of approximately $ 600,000.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

FOREPERSON

Signed by Mathew Getter on behalf
of the UNITED STATES ATTORNEY